MICHELE MCCORMICK, CONSERVATOR OF THE ESTATE OF
ALYSSA M. WICKERT MCCORMICK, A MINOR, AND
PATRICK AND MICHELE MCCORMICK, PARENTS OF
ALYSSA M. WICKERT MCCORMICK, A MINOR, APPELLANTS,
v. CITY OF NORFOLK, APPELLEE.

641 N.W.2d 638

Filed April 12, 2002. No. S-00-1332.

Richard L. Swenson, of Wintroub, McCreary, Lunz & Jersey, for appellants.

C.J. Gatz and Todd B. Vetter, of Gatz, Fitzgerald & Vetter, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellants, Patrick and Michele McCormick, filed this action under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997), for personal injuries sustained by their 9-year-old daughter, Alyssa M. Wickert McCormick. The district court sustained the demurrer of the appellee, City of Norfolk (City), and dismissed the petition. The court found that the City's acts and omissions were immune from liability under § 13-910(9). The court found that the petition could not be amended to state a claim against the City and dismissed the petition. We affirm.

## BACKGROUND

In their amended petition, the McCormicks alleged the following facts, which this court accepts as true in reviewing the order sustaining the City's demurrer:

On May 16, 1998, Alyssa was hit by a car while walking her bicycle in a marked crosswalk across Fourth Street at the intersection of Fourth and Elm Streets. Alyssa suffered severe and permanent injuries because of the accident. She is restricted to a wheelchair and requires 24-hour care.

Fourth Street has a high volume of traffic, runs in a north-south direction, and is unimpeded by traffic control signals or pedestrian crossing devices at the intersection. Before the accident, the City had actual or constructive knowledge of numerous motor vehicle collisions and motor vehicle-pedestrian collisions at this intersection. The City also had knowledge that the intersection was used by persons of like age, intelligence, and experience as

Alyssa. The traffic on Elm Street runs in an east-west direction and is stopped at the intersection by stop signs.

The McCormicks alleged that the City's failure to install traffic signals or other types of warning devices to protect pedestrians had created a dangerous and hazardous condition. They also alleged that pedestrians of Alyssa's age, intelligence, and experience would not appreciate the danger. They further alleged that although the choice of what type of warning or protection to use was discretionary, the decision whether to do so was not a planning-level decision involving policy judgment. The McCormicks have not alleged that the City failed to comply with any adopted policies.

The City demurred on the ground that the McCormicks' amended petition failed to set forth facts sufficient to constitute a cause of action. The court found that because § 13-910(9) provides immunity to the City for its acts or omissions, the McCormicks had failed to state a cause of action. It concluded that they could not amend their petition to correct its defects.

## ASSIGNMENTS OF ERROR

The McCormicks assign that the district court erred in finding that § 13-910(9) provided immunity to the City and in sustaining the City's demurrer.

## STANDARD OF REVIEW

In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Northwall v. State, ante* p. 1, 637 N.W.2d 890 (2002).

## ANALYSIS

Paragraph 9 of the petition states:

> That the failure of the [City] to install a traffic signal or any other types of warning device to protect pedestrians using the crosswalk and proceeding either in an easterly or westerly direction across 4th Street at the intersection of 4th Street and Elm Street on May 16, 1998, rendered that intersection dangerous and hazardous for pedestrian use; that on May 16, 1998, the [City] had actual or constructive notice

or knowledge of the dangerous and hazardous condition of the intersection . . . and that said intersection, in its hazardous state, was under the control of the [City]; that the dangerous condition or hazard was not readily apparent to [Alyssa], who was likely to be injured by the dangerous or hazardous condition of the intersection and as such, the [City] had a non-discretionary duty to warn of the danger or take other protective measures that would prevent injury as a result of the dangerous or hazardous condition of the intersection of 4th and Elm Streets. That the [City's] failure to warn or take other protective measures in this situation constituted actionable negligence and was not a planning-level decision involving a social, economic, or political policy judgment and, therefore, did not come within the discretionary function exemption of the Political Subdivision[s] Tort Claim[s] Act.

In the petition, the McCormicks admitted that stop signs were in place for traffic crossing Fourth Street on Elm Street in an east-west direction. They also admitted that there was a marked crosswalk for pedestrians crossing Fourth Street. We read the petition to assert that the City's failure to install traffic control devices for traffic moving in a north-south direction on Fourth Street created a dangerous condition or hazard. The McCormicks further alleged that this dangerous and hazardous condition gave rise to a duty to warn or take other measures to protect pedestrians who are crossing Fourth Street.

■ The court granted the City's demurrer because it found that the City was immune from liability under the exception in § 13-910(9). Section 13-908 of the Political Subdivisions Tort Claims Act sets forth a general waiver of immunity subject to certain limited exceptions stated in § 13-910. *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998). Section 13-910 provides:

The Political Subdivisions Tort Claims Act . . . shall not apply to:

. . . .

(9) Any claim arising out of the malfunction, destruction, or unauthorized removal of any traffic or road sign, signal, or warning device unless it is not corrected by the political

subdivision responsible within a reasonable time after actual or constructive notice of such malfunction, destruction, or removal. Nothing in this subdivision shall give rise to liability arising from an act or omission of any political subdivision in placing or removing any traffic or road signs, signals, or warning devices when such placement or removal is the result of a discretionary act of the political subdivision.

The City contends that under the second sentence of § 13-910(9), its decisions regarding the installation of traffic control or warning devices do not give rise to a cause of action. It claims that its decisions to install a crosswalk and stop signs rather than traffic signals or other devices are immune from liability as discretionary functions. The McCormicks, however, argue that the second sentence is only a cautionary reminder that this exception does not result in liability when such placement or removal is the result of a discretionary act. We agree.

Section 13-910(9) distinguishes between a political subdivision's liability for failure to maintain or replace existing signs, signals, or warning devices and its liability for acts or omissions concerning their placement or deliberate removal. It states that the City's acts or omissions regarding their placement or removal are exempt from the general waiver of immunity when they are the result of a discretionary act. Thus, the City's immunity ultimately depends upon whether the acts or omissions regarding its alleged failure to install traffic controls or pedestrian crossing devices are discretionary within the meaning of § 13-910(2).

Section 13-910(2) provides an exception to liability for "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion be abused." A political subdivision can be liable in tort "to the extent, and only to the extent, provided by the Political Subdivisions Tort Claims Act." See § 13-902.

Neb. Rev. Stat. § 60-6,121 (Reissue 1998) indicates that the Legislature intended political subdivisions to have discretion in the installation of traffic control devices:

Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon

> highways under their jurisdictions *as they deem necessary* to indicate and to carry out the provisions of the Nebraska Rules of the Road or to regulate, warn, or guide traffic. All such traffic control devices erected pursuant to the rules shall conform with the manual.

(Emphasis supplied.) See, also, *Allen v. County of Lancaster*, 218 Neb. 163, 352 N.W.2d 883 (1984) (holding that when official must make judgmental decision within regulatory framework, acts are discretionary).

Further, the installation of traffic control devices involves balancing the competing needs of pedestrian safety, engineering concerns, commerce, and traffic flow—which in itself involves safety issues—with limited financial resources. These decisions are normally the type of economic, political, and social policy judgments that the discretionary function exception was designed to shield. See, e.g., *Rapp v. State*, 648 P.2d 110 (Alaska 1982); *Aguehounde v. District of Columbia*, 666 A.2d 443 (D.C. 1995); *Department of Transp. v. Konney*, 587 So. 2d 1292 (Fla. 1991); *Nawrocki v Macomb Co Rd Comm*, 463 Mich. 143, 615 N.W.2d 702 (2000); *Nevada Power v. Clark County*, 107 Nev. 428, 813 P.2d 477 (1991); *Weiss v. New Jersey Transit*, 128 N.J. 376, 608 A.2d 254 (1992); *Winwood v. Dayton*, 37 Ohio St. 3d 282, 525 N.E.2d 808 (1988); *Ochoa v. Taylor*, 635 P.2d 604 (Okla. 1981); *City of Midland v. Sullivan*, 33 S.W.3d 1 (Tex. App. 2000). But see *Alexander v. Eldred*, 63 N.Y.2d 460, 472 N.E.2d 996, 483 N.Y.S.2d 168 (1984) (holding that city did not have immunity where evidence that traffic engineer had not reviewed current traffic study and believed that city had no power to install stop sign on private road established that traffic plan was based on both inadequate study and unreasonable basis).

■ "Because immunity necessarily implies that a 'wrong' has occurred, we are cognizant that some tort claims, against a governmental agency, will inevitably go unremedied." *Nawrocki*, 463 Mich. at 157, 615 N.W.2d at 710. We are also cognizant that every intersection has some inherent danger and that there are, potentially, unlimited theories of recovery that could be raised against governmental entities for failing to install traffic control devices. The immunity provisions of § 13-910(2) and (9) signify that this is the type of public policy decision the Legislature

intended to preclude courts from reviewing. We conclude that the placement of traffic control devices is a discretionary function of a political subdivision.

The McCormicks, however, argue that the discretionary function exception does not apply when (1) a governmental entity has actual or constructive knowledge of a known dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard is not readily apparent to persons likely to be injured by the dangerous condition or hazard. See, *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999); *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 502 N.W.2d 80 (1993).

In *Lemke*, we relied on two Florida cases for the duty-to-warn exception to the discretionary function immunity. Florida recognizes an operational-level duty to warn the public of a known dangerous condition which is not readily apparent to those who could be injured by the condition—when the governmental entity has created the danger through a discretionary decision. See, *City of St. Petersburg v. Collom*, 419 So. 2d 1082 (Fla. 1982); *Department of Transp. v. Neilson*, 419 So. 2d 1071 (Fla. 1982).

The Florida Supreme Court has explained that this exception applies only when a dangerous condition arises out of the design or planning decision itself. See *Department of Transp. v. Konney, supra*. In *Konney*, a jury awarded damages to the decedent's personal representative on a duty-to-warn theory. The plaintiffs had alleged that a rural intersection should have been upgraded by installing flashing beacons and rumble strips instead of stop signs to warn drivers of the intersection. The Florida Supreme Court reversed. The court concluded that the evidence established that the intersection was not a known dangerous condition when it was created. It held that the plaintiffs could not establish a cause of action by asserting that the county had a duty to upgrade the intersection because of changed circumstances. See *id*.

The McCormicks' petition did not allege that the City's initial design or planning decisions regarding this intersection were inherently dangerous or that the decisions caused a dangerous condition or hazard. Rather, they allege that the City's duty to warn arose out of its failure to install traffic control devices after it had actual or constructive notice of numerous accidents at the

intersection. In their brief, the McCormicks concede that "[t]he design of this street itself was adequate as it was. All it needed was the addition of a traffic light, a pedestrian crossing signal, a stop sign at the crosswalk or some other form of warning or protection of the children using that crosswalk." Brief for appellants at 7.

█ If, upon the sustainment of a demurrer, it is clear that no reasonable possibility exists that an amendment will correct a pleading defect, leave to amend need not be granted. *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000). The McCormicks' petition purports to impose a duty to warn or otherwise protect pedestrians based upon the City's acts or omissions regarding traffic control devices in response to changed traffic circumstances. We conclude that these circumstances cannot form the basis of a valid duty-to-warn claim under the Political Subdivisions Tort Claims Act.

## CONCLUSION

The McCormicks' petition has failed to state a valid duty-to-warn claim against the City and cannot be amended to correct the defect. The district court's sustainment of the City's demurrer is affirmed.

AFFIRMED.