GEORGETT TADROS, APPELLANT AND CROSS-APPELLEE,
v. CITY OF OMAHA, A MUNICIPAL CORPORATION,
APPELLEE AND CROSS-APPELLANT.

694 N.W.2d 180

Filed March 25, 2005.    No. S-03-1336.

David M. Woodke and Aimee C. Bataillon, of Woodke & Gibbons, P.C., L.L.O., and Matthew G. Miller for appellant.

Robert J. Hamer, Deputy Omaha City Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Georgett Tadros was seriously injured when she was struck by a vehicle as she walked across West Center Road in Omaha, Nebraska. Tadros alleged that the City of Omaha (City) was negligent in programming the crosswalk signal at the intersection and that the driver who struck her was negligent in failing to yield the right-of-way to a pedestrian. The district court found that Tadros' contributory negligence precluded her from recovery, and it dismissed her petition. Tadros appealed, and the City has filed a cross-appeal.

## SCOPE OF REVIEW

■ In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 267 Neb. 958, 679 N.W.2d 198 (2004).

## FACTS

On December 16, 1999, Tadros was crossing West Center Road at the intersection of 133d Street and was struck by a pickup truck driven by James Bowley, Jr. When Tadros started to cross the street, the white "walk" light on the crosswalk signal was illuminated. According to Tadros' petition, the signal changed to red as she stepped from the median in the middle of West Center Road. As she crossed the northernmost eastbound lane, an eastbound white car that had entered the intersection came to a sudden stop and allowed Tadros to pass. She proceeded across the northernmost eastbound lane of traffic, but when she reached the southernmost eastbound lane, she was struck by Bowley's pickup.

West Center Road runs east and west. At the intersection in question, for westbound traffic, there is a right-turn lane, two through-traffic lanes, and a left-turn lane. A 7-foot-9-inch-wide median separates the westbound left-turn lane from the two eastbound lanes. The total crossing distance across West Center Road from the north curb to the south curb is 81 feet 10 inches. The distance from the north curb to the middle of the southernmost

eastbound lane of West Center Road, where Tadros was struck, measures 78 feet.

At the intersection of 133d Street and West Center Road, there is an unmarked crosswalk with a signal that may be activated only by a pedestrian manually pressing the crosswalk button. At the time of this accident, the crosswalk signal was set as follows: 7 seconds for the white "walk" light, 11 seconds for the flashing "don't walk" light, and 4 seconds for the solid "don't walk" light. There was also a 1-second period when the traffic lights were red in all directions. The total allotted time for the crosswalk signal was 23 seconds.

Tadros filed a petition in Douglas County District Court alleging that Bowley and the City were negligent and seeking to recover damages for injuries she sustained. She alleged that the City had failed to program the crosswalk signal to provide a sufficient amount of time for a pedestrian to cross all lanes of West Center Road, failed to provide a pedestrian-activated crosswalk signal or detector on the median, and failed to program the signal in accordance with the appropriate design standards in the industry. She alleged that Bowley was negligent in failing to keep a reasonable and proper lookout, failing to keep his vehicle under reasonable and proper control, failing to yield the right-of-way to a pedestrian in a crosswalk, and operating his vehicle at a speed unreasonable under the circumstances then and there existing.

The City answered, claiming that it had discretionary function immunity pursuant to Neb. Rev. Stat. § 13-910(2) (Cum. Supp. 2002). It also claimed that Tadros was contributorily negligent in failing to keep an adequate lookout for oncoming traffic and in leaving the median, a place of safety, and walking into the path of oncoming traffic without looking.

Tadros' last memory before the incident was leaving a bank near the northeast corner of 133d Street and West Center Road, where she had transacted business. She testified that she had crossed West Center Road using the pedestrian crosswalk many times, that she knew the pedestrian signal was "very short," that she had previously experienced trouble crossing in the time allotted, and that "everybody tried to speed up at this intersection."

The district court found that Tadros was walking in a slight southeasterly direction from the north curb to the south curb and

was within the general area where crosswalk markings would be if they existed. It found that Tadros had suffered extremely serious injuries and that many of the injuries were permanent and would likely be the source of additional health complications in the future.

The court found that the City was not entitled to discretionary function immunity under § 13-910(2) because its setting of the pedestrian crossing light was dictated by the Manual on Uniform Traffic Control Devices (manual). Upon reading the appropriate sections of the manual in pari materia, the court concluded that the "pedestrian clearance interval" included the flashing "don't walk" signal of 11 seconds, the solid "don't walk" signal of 4 seconds, and the additional 1-second "all red" signal, for a total of 16 seconds.

The court then considered the negligence of the City in failing to time the pedestrian clearance interval according to the manual. It found that Tadros had presented sufficient evidence to establish liability on the part of the City. However, the court found that Tadros was contributorily negligent when she left a place of safety on the median; proceeded against a solid "don't walk" signal, which indicated she did not have the right-of-way; and was struck by oncoming traffic.

In comparing the negligence of the parties, the court concluded that Tadros was guilty of contributory negligence equal to or greater than that of the City and that Bowley's negligence was, at best, minimal. The court accorded the following percentages of negligence: 50 percent to Tadros, 40 percent to the City, and 10 percent to Bowley. Because the court found that Tadros' percentage of negligence was 50 percent, she was precluded from recovery pursuant to Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995).

## ASSIGNMENTS OF ERROR

Tadros assigns the following errors: The district court erred (1) in finding that the pedestrian clearance interval consists of more than the flashing "don't walk" signal, when the manual and expert testimony indicated otherwise; (2) in failing to consider the statutory and common-law duties of Bowley and the substantial evidence that he breached such duties; (3) in finding that

Tadros was 50 percent negligent for leaving a place of safety and proceeding into oncoming traffic without looking; (4) in failing to consider Tadros' statutory duty to immediately proceed to the sidewalk once she had partially completed her crossing of West Center Road; and (5) in misapplying the law when determining the degree of Tadros' contributory negligence, if any.

The City's cross-appeal asserts that the district court erred in not finding that the setting of traffic signal timing is a discretionary function, which would give the City immunity from liability.

## ANALYSIS

### PEDESTRIAN CLEARANCE INTERVAL

Tadros claims the district court erred in its determination of what constitutes a pedestrian clearance interval. The amount of time allotted for a pedestrian to cross the intersection in question is an important element in assessing the City's negligence.

Neb. Rev. Stat. § 60-6,118 (Reissue 2004) states:

> Consistent with the provisions of the Nebraska Rules of the Road, the Department of Roads may adopt and promulgate rules and regulations adopting and implementing a manual providing a uniform system of traffic control devices on all highways within this state which, together with any supplements adopted by the department, shall be known as the Manual on Uniform Traffic Control Devices.

The parties do not dispute the fact that the manual is applicable to this case.

The manual states at paragraph 4D-7, "Pedestrian Intervals and Phases":

> Under normal conditions, the WALK interval should be at least 4 to 7 seconds in length so that pedestrians will have adequate opportunity to leave the curb before the clearance interval is shown. . . .
>
> A pedestrian clearance interval shall always be provided where pedestrian signal indications are used. It shall consist of a flashing DON['']T WALK indication. The duration should be sufficient to allow a pedestrian crossing in the crosswalk to leave the curb and travel to the center of the farthest traveled lane before opposing vehicles receive a

green indication (normal walking speed is assumed to be 4 feet per second).

The parties disagreed as to whether the pedestrian clearance interval for the crosswalk in question would include the flashing "don't walk" signal, the solid "don't walk" signal, and the 1-second period when the traffic signals were red in all directions.

The district court interpreted the manual to require that the pedestrian clearance interval include the flashing "don't walk" signal, the solid "don't walk" signal, and the additional 1-second "all red" period, for a total of 16 seconds. It concluded that a finding that the pedestrian clearance interval was limited to only the period when the flashing "don't walk" signal was activated would be inconsistent with an interpretation of paragraph 4D-7 in its entirety.

■ The district court's interpretation of the manual presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004). Therefore, we review the terms of the manual independent of the determination made by the district court.

The plain language of the manual states that a pedestrian clearance interval consists of the flashing "don't walk" signal. We conclude that the district court's interpretation that the pedestrian clearance interval also included the solid "don't walk" signal and the 1-second "all red" period was incorrect. It is obvious that the purpose of the 4-second solid "don't walk" signal and the 1-second "all red" signal was to give pedestrians the necessary time to move from the middle of the "farthest traveled" traffic lane before oncoming traffic begins moving.

The intersection in question measured 78 feet from the north curb to the middle of the southernmost lane, which was the area where Tadros was struck. At a rate of 4 feet per second, a pedestrian would require 19.5 seconds to cross from the north curb to the middle of the southernmost lane during the flashing "don't walk" signal. The flashing "don't walk" signal at the intersection of 133d Street and West Center Road provided an interval of just 11 seconds. Assuming a normal walking speed of 4 feet per second, Tadros could have walked only 44 feet. This interval

could potentially strand pedestrians on the median with no way to reactivate the crosswalk signal. There was no pedestrian activation device on the median. A pedestrian would then have to either cross the eastbound lanes of traffic against the solid "don't walk" signal or wait for another pedestrian to activate the crosswalk signal.

Since the district court erred in its determination of the pedestrian clearance interval, the court also relied upon erroneous information in its apportionment of the City's negligence.

■ In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of a trial court will not be disturbed on appeal unless they are clearly wrong. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 267 Neb. 958, 679 N.W.2d 198 (2004). Determining apportionment of negligence is solely a matter for the fact finder, and its action will not be disturbed on appeal if it is supported by credible evidence and bears a reasonable relationship to the respective elements of negligence proved at trial. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

■ In *Aguallo*, we stated that the common-law concept of contributory negligence has been abrogated by comparative negligence, which relieved the parties of an all-or-nothing situation. The apportionment of damages is determined by considering the relative fault of the parties.

[An] important factor to be considered in apportioning fault is "the extent to which [each person's risk-creating] conduct failed to meet the applicable legal standard." Restatement (Third) of Torts: Apportionment of Liability § 8, comment *c.* at 87 (2000). That party X deviated substantially from its standard of care while party Y's deviation was only slight suggests that X should shoulder a higher burden for the damage done.

*Aguallo*, 267 Neb. at 808, 678 N.W.2d at 90.

In the case at bar, the district court failed to properly consider the extent to which the City's conduct failed to meet the applicable legal standard. The court's apportionment of negligence did not bear a reasonable relationship to the respective elements of negligence proved by Tadros at trial. Although the court found that the City was negligent in setting the pedestrian clearance

interval, it did not properly consider the effect of the City's failure to properly set the pedestrian clearance interval.

The City set an interval of only 11 seconds when it should have allowed 19.5 seconds. Eleven seconds would allow a pedestrian to walk 44 feet across the intersection instead of 78 feet, the distance from the north curb to the middle of the southernmost eastbound lane of West Center Road. This difference of 34 feet should have been considered by the district court in apportioning the City's negligence. The court did not properly consider the City's duty to ensure that the crosswalk signal provided sufficient time for a pedestrian to cross the intersection.

In comparing the relative fault of the parties, the proper amount of time for the pedestrian clearance interval was a significant factor that the district court did not consider in its assessment of the City's standard of care. The court's apportionment of the City's negligence was clearly wrong.

BOWLEY'S NEGLIGENCE

The district court found that Bowley's negligence was minimal in that "he possibly should have been more alert to the fact that he was approaching an intersection which contained an unmarked crosswalk and that the 'white vehicle' had quickly stopped in the next lane in front of him."

The law imposes several duties upon drivers. Every driver is required to exercise due care to avoid colliding with a pedestrian upon any roadway. See Neb. Rev. Stat. § 60-6,109 (Reissue 2004). "Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle." Neb. Rev. Stat. § 60-6,153(3) (Reissue 2004). Drivers are required to maintain a proper lookout for their own safety and the safety of others. See Springer v. Bohling, 263 Neb. 802, 643 N.W.2d 386 (2002).

Tadros was struck within a crosswalk area. When she entered the northernmost eastbound lane, the driver of a white car in that lane stopped for her. Bowley did not see Tadros. He proceeded through the intersection and did not stop until his vehicle struck Tadros. An engineer who analyzed automobile accidents testified

that Bowley should have been able to see Tadros from as far west as 134th Street.

In *Styskal v. Brickey*, 158 Neb. 208, 217, 62 N.W.2d 854, 861 (1954), this court stated:

> "A 'go' signal at a street intersection confers no authority on the driver of an automobile who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it. It is not a command to go but a qualified permission to proceed lawfully and carefully in the direction indicated . . . ."
>
> . . . .
>
> A vehicle entering a street intersection with a traffic light in his favor is under obligation to use due care and to yield the right-of-way to vehicles in the intersection. His right-of-way is subject to the rights of those already in the intersection.

Tadros was already in the intersection when Bowley approached. She was seen by the driver of the white car, and she had the right-of-way to proceed. Witnesses testified that Tadros was walking at a "slow" or "normal" pace across the intersection. No one stated that she suddenly left the median.

At trial, Bowley testified that he was driving east in the south or curb lane of West Center Road. He recalled a white car in the northernmost eastbound lane but could not recall if it was ahead of him. In an earlier deposition, he stated that the white car was farther east than he was. On cross-examination, Bowley said he hit Tadros after he had passed through the intersection. He did not notice the white car slowing down.

Paul Gilinsky testified that he was traveling eastbound on West Center Road just before the accident. He was in the right-hand lane as he approached the intersection of 133d Street and West Center Road, and a red pickup truck was in front of him. Gilinsky said that he was traveling at about 45 miles per hour and that the pickup was traveling at about the same speed. He saw a woman standing on the northeast corner of the intersection of 133d Street and West Center Road as he drove through the intersection of 134th Street and West Center Road. He saw her on the westernmost portion of the median, saw her step off the median, and saw her walk across the street at a normal pace. He saw a

white car in the left-hand eastbound lane stop, and he saw the woman walk in front of that car. Gilinsky then saw the pickup hit the woman.

In *Bashus v. Turner*, 218 Neb. 17, 20, 352 N.W.2d 161, 164 (1984), we stated that a place of safety is "any place established by the evidence that is occupied by the pedestrian just prior to sudden movement where he is then safe from injury, considering the facts and circumstances in each case then existing." We held that the determining element in a car-pedestrian accident is the pedestrian's sudden movement into the vehicle's path followed by an almost instantaneous collision. *Id.* The record does not support a finding that Tadros made any sudden movement into the path of Bowley's pickup. Tadros had time to walk in front of the white car and into the southernmost lane of eastbound traffic before she was hit by Bowley.

Bowley had a duty to maintain a proper lookout. See *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). He did not see Tadros; however, the driver of the white car saw her and stopped as she crossed the intersection. Tadros was also seen by Gilinsky, who saw her step off the median and walk across the street at a normal pace. He saw the white car stop for her, and he saw Tadros walk in front of that car. He then saw Bowley hit Tadros.

Bowley breached his duty to maintain a proper lookout and his duty not to overtake and pass a vehicle that had stopped at the crosswalk to allow Tadros to cross the street. He had a duty to yield to Tadros, who was still in the intersection. The district court failed to consider the extent to which Bowley's conduct failed to meet his duty to Tadros. The district court's apportionment of negligence to Bowley did not bear a reasonable relationship to the respective elements of Bowley's negligence which were proved at trial. The court's apportionment of Bowley's negligence was clearly wrong.

### DISCRETIONARY FUNCTION EXEMPTION

In its cross-appeal, the City argues that the district court erred in not finding that setting the pedestrian clearance interval was a discretionary function involving inherent public policy issues, which would therefore exempt the City from liability. Section 13-910 provides, in pertinent part:

The Political Subdivisions Tort Claims Act . . . shall not apply to:

. . . .

(2) Any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused.

A two-step analysis is used to determine whether the discretionary function exemption applies. *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004). The court must first consider whether the conduct is a matter of choice for the acting employee. *Id.* "This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* at 809, 678 N.W.2d at 90. If the court determines that the conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exemption was designed to shield. *Id.* If the statute, regulation, or policy specifically prescribes a course of action which an employee must follow, then there is no discretionary immunity. See *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). The employee's conduct must involve judgment or choice or there is no discretion for the discretionary function exemption to protect. See *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994).

In the case at bar, the district court concluded that the manual required the City to set the pedestrian clearance interval and that the City had no discretion in making that determination. We considered the issue of discretionary immunity in the installation of traffic control devices in *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002), and concluded that discretionary immunity protected the city's act or omission in not installing traffic control devices in response to changed traffic circumstances. In *Maresh*, we held that discretionary immunity did not protect the State from liability where the State did not require a contractor to use, place, or install traffic control devices or markings on a highway under construction as provided for in the manual.

Neb. Rev. Stat. § 60-6,121 (Reissue 2004) requires that all traffic control devices erected pursuant to the Nebraska Rules of the Road conform to the manual. Once the City elected to install the pedestrian crosswalk signal, it was required to conform to the manual in determining the pedestrian clearance interval. As previously stated, the placement of traffic control devices is a discretionary function. See *Maresh v. State, supra*. However, once such traffic control devices are in place, § 60-6,121 requires that "[a]ll such traffic control devices erected pursuant to the rules shall conform with the manual." Thus, the crosswalk signal was required to conform with the manual, and there was no element of choice for which discretionary immunity would apply.

The City did not state any reason for a deviation from the timing set forth in the manual. The district court correctly concluded that the setting of the pedestrian clearance interval was not the product of judgment or choice, because there was no discretion allowed in setting the interval.

> Where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees. . . .
>
> "For the government to show merely that some choice was involved in the decision-making process is insufficient to activate the discretionary function exception. The balancing of policy considerations is a necessary prerequisite."

(Citations omitted.) *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir. 1986).

The district court correctly concluded that any alleged discretion in setting the pedestrian clearance interval was not the kind of judgment that the discretionary function exemption was designed to shield. We find no merit to the City's cross-appeal because the City was not entitled to discretionary function immunity under § 13-910(2).

## CONCLUSION

The judgment of the district court finding that the City was not immune from liability was correct. However, the court's

apportionment of negligence did not bear a reasonable relationship to the respective elements of negligence proved at trial. The court's failure to consider the duties of the City and Bowley in determining their respective negligence invalidates the court's analysis of the comparative responsibility of the parties. In *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004), we stated that when a fact finder has used an incorrect standard of care in apportioning fault between a plaintiff and a defendant, the appropriate appellate remedy will generally be to remand for a new trial so the fact finder can employ the correct standard in its apportionment analysis. Pursuant to our decision in *Aguallo*, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

STEPHAN, J., not participating.