LARRY BLASER AND TERRY MCCAW AND
PATRICIA MCCAW, HUSBAND AND
WIFE, APPELLANTS, v. COUNTY OF
MADISON, NEBRASKA, A POLITICAL
SUBDIVISION, APPELLEE.

___ N.W.2d ___

Filed June 6, 2014.    No. S-13-764.

1. **Political Subdivisions Tort Claims Act: Appeal and Error.** In actions brought under the Political Subdivisions Tort Claims Act, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.

2. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.

3. **Administrative Law: Motor Vehicles.** The placement of traffic control devices is a discretionary function, although once a decision to utilize a particular device has been made, the device is required to conform to the Manual on Uniform Traffic Control Devices.

Appeal from the District Court for Madison County: ROBERT B. ENSZ, Judge. Affirmed.

Todd B. Vetter, of Fitzgerald, Vetter & Temple, for appellants.

Vincent Valentino and Brandy Johnson for appellee.

WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

In 2008, Larry Blaser and Terry McCaw sustained personal injuries when Blaser drove a vehicle in which McCaw was a passenger into a washed-out area on a vacated county road in Madison County, Nebraska (the County). Blaser, McCaw, and their wives sued Madison County under the Political Subdivisions Tort Claims Act (PSTCA),[1] alleging the County was negligent. After a bench trial, the district court for Madison County found the County had breached its duty to maintain the vacated road and entered judgment against the County. The

―――――――――

[1] Neb. Rev. Stat. §§ 13-901 to 13-928 (Reissue 2007).

County appealed, and on June 6, 2012, in case No. S-11-1048, we dismissed the appeal, without opinion, because of a jurisdictional defect. The defect was corrected (the dismissal of Blaser's wife's claims), and the County filed a second appeal. In the second appeal, we determined the district court erred in finding the County had a duty to maintain the vacated road, and we reversed the judgment and remanded the cause for a new trial.[2] Following remand, the parties stipulated that the matter should be submitted to the district court on the record made at the original trial. The district court then determined that Madison County retained sovereign immunity pursuant to § 13-910(9) and entered judgment in favor of the County. After a motion for new trial was overruled, this timely third appeal was filed. We conclude the district court did not err in determining that the County retained its sovereign immunity and therefore affirm its judgment.

## BACKGROUND

### Facts and Procedural Background

The facts and procedural background are set forth in full in our prior opinion.[3] We restate the most relevant facts here.

On November 9, 2008, Blaser was driving his 1996 Ford Ranger pickup southbound on 545th Avenue, a vacated road in Madison County, and McCaw was riding as a passenger. While traveling on the vacated road, Blaser drove into a washout, or a large hole in the middle of the road, approximately 12 feet wide and 8 feet deep. As a result of the accident, the pickup truck was damaged, Blaser sustained minor injuries, and McCaw sustained severe injuries. Blaser, McCaw, and their wives initiated this action against the County seeking damages for the injuries resulting from the accident.

According to the trial record, 545th Avenue is a north-south roadway between 845th Road and 846th Road and 846th Road is the county line between Madison County and Pierce County, Nebraska, with Madison County lying to the south. When the

---

[2] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[3] *Id*.

County vacated 545th Avenue in 2004, it qualified the vacation and retained a right-of-way over the vacated road subject to any easements of record.

In April 2005, after the County had vacated the road, road closed signs were placed at the north and south ends of the vacated road. Blaser and McCaw testified that on November 9, 2008, the day of their accident, they did not observe any road closed signs. The deputy who investigated the accident stated that a road closed sign at the north end of the vacated road had been unbolted and laid on the ground next to the upright post and was not visible from the road on the day of the Blaser/McCaw accident. Gary Drahota, a man who owned land and lived in the area, stated that he did not see a road closed sign at the north end of the vacated portion of the road at the intersection of 545th Avenue and 846th Road on October 27, 2008. Another man, who owns land surrounding the vacated road, testified that he recalled seeing a road closed sign at the north end of the vacated road a few days before the Blaser/McCaw accident.

Several weeks prior to the Blaser/McCaw accident, another accident occurred involving the same washout on the vacated road. Between October 27 and October 30, 2008, Drahota notified law enforcement that he had been traveling on the vacated road when he found an abandoned vehicle in the washout. On October 30, a deputy sheriff for the County investigated this report and found the abandoned vehicle in the washout. He approached the abandoned vehicle from the south end of the vacated road, traveling north.

Sometime after the County was notified of the abandoned vehicle and before the Blaser/McCaw accident, the County's highway superintendent was instructed to inspect the road closed signs on the vacated road. He testified that while he did inspect the south end of the vacated portion of 545th Avenue, he did not actually inspect the north end of the vacated portion of the road at the intersection of 545th Avenue and 846th Road. Regarding the north portion of the vacated road, the superintendent stated he positioned himself 2 miles north of the county line and looked to the south. He testified

that he could not see any signs from his vantage point of 2 miles away.

In their operative complaint, the Blasers and McCaws alleged that the County was negligent because it failed to "correct the malfunction, destruction, or any unauthorized removal of the Road Closed signed [sic] when it had actual and constructive knowledge and notice of the malfunction, destruction, and or [sic] removal of the sign." In its answer, the County denied many of the allegations of the complaint but admitted that, as part of the investigation by the Madison County sheriff's office, the sheriff's office located a road closed sign that had been knocked over. The record shows that the investigation occurred on November 9, 2008, the day of the accident. The County affirmatively asserted that it was immune from suit under various provisions of the PSTCA and asserted the affirmative defenses of contributory negligence, assumption of the risk, and alternative safe route. One particular defense under the PSTCA provides that a political subdivision retains sovereign immunity from "[a]ny claim arising out of the malfunction, destruction, or unauthorized removal of any traffic or road sign . . . unless it is not corrected by the political subdivision responsible within a reasonable time after actual or constructive notice of such malfunction, destruction, or removal."[4]

### Initial Determination by District Court

After a bench trial, the district court determined that the County negligently breached a duty to maintain the vacated road and that the breach was a proximate cause of the accident. Although it noted that the evidence regarding the existence and position of the road closed sign on the day of the accident was in dispute, the court made no finding as to whether the sign was up or down on the day of the accident. The court ultimately entered a judgment for damages in favor of Blaser and the McCaws.

---

[4] § 13-910(9).

### PRIOR APPEALS

We dismissed the County's initial appeal because of a jurisdictional defect.[5] In the second appeal, we determined the district court erred in finding the County had a duty to remedy the condition of the vacated road, reasoning it had no duty to maintain the road after vacating it. Instead, we concluded the County had only the duty to do what a reasonable County would do, having vacated a road but retaining a right-of-way.[6] We stated that the scope of this duty was "less than the obligation to fully maintain" the road as though it were a public road, but was "more than no obligations, as with a completely vacated road."[7] Citing the proposition that the "issues in a case are framed by the pleadings,"[8] we noted that the operative complaint alleged that the County breached its duty by "'failing to correct the malfunction, destruction, or any unauthorized removal of the Road Closed'"[9] sign when the County had actual or constructive knowledge and notice of the malfunction, destruction, or unauthorized removal. We determined that the "central issue in the case was whether the County met its obligations relative to the warning sign it had chosen to erect,"[10] and we remanded the cause with directions

> to find whether the County had actual or constructive notice that *its warning sign was down* on the date of the accident and whether the County had reasonable time to correct the problem. These findings will determine whether the County retained sovereign immunity, as the County claims under § 13-910(9).[11]

After the opinion was released, the County filed a motion for rehearing asserting that our opinion was unclear as to

---

[5] See *Blaser v. County of Madison, supra* note 2.

[6] *Id.*

[7] *Id.* at 308, 826 N.W.2d at 568.

[8] *Id.* at 309, 826 N.W.2d at 568, citing *Richards v. Meeske*, 268 Neb. 901, 689 N.W.2d 337 (2004).

[9] *Id.* at 309, 826 N.W.2d at 568.

[10] *Id.* at 311, 826 N.W.2d at 569.

[11] *Id.* (emphasis supplied).

the scope of the remand. Specifically, the County sought clarification as to whether the remand was limited to a determination of the road closed sign issue or whether it was for a new trial on all issues and defenses. On March 20, 2013, we overruled the motion for rehearing with a minute entry stating: "Cause reversed and remanded for a new trial on all issues."

### Proceedings Following
### Remand

After issuance of our mandate and remand to the district court, Blaser and the McCaws (appellants) moved for leave to file a second amended complaint. Specifically, they sought to amend their allegation of breach of duty to assert the following:

> [The] County was negligent and breached its duty to [appellants] by failing to exercise the degree of care that would be exercised by a reasonable county under the circumstances, which negligence includes, but is not limited to:
>
> A. Failing to prevent motorists from driving into the hole in the road when it knew that motorists continued to use the publicly retained right of way.
>
> B. It knew or should have known that any sign posted was not effective to prevent travel on right of way by motorists.
>
> C. Failing to properly sign the road as required by the Manual on Uniform Traffic Control Devices[.]
>
> D. Failing to inspect the signs when it knew or should have known that the signs were not effective.
>
> E. Failing to correct the malfunction, destruction, or any unauthorized removal of the Road Closed signed [sic] when it had actual and constructive knowledge and notice of the malfunction, destruction, and or removal of the sign, which sign would have notified the traveling public that the section of road was vacated and contained dangers thereon.

The district court denied leave to amend, reasoning the last allegation was part of the original complaint and the first four

allegations had "been addressed by the Supreme Court and rejected as a duty greater than legally required."

The parties then stipulated that the case could be submitted on the testimony, exhibits, and stipulations contained in the bill of exceptions from the second appeal. After considering this record again, limiting itself to what it considered the law of the case after the second appeal, the district court found the County was entitled to sovereign immunity under § 13-910(9). In doing so, the court found that the road closed sign was down on the day of the accident, it was down only 2 or 3 days prior to the accident, and the County had no actual or constructive knowledge that it was down during this time period. The district court refused to consider whether the road closed sign complied with the Manual on Uniform Traffic Control Devices (Manual), reasoning that the "propriety of the sign" was "not an issue on remand." It also did not consider appellants' argument that the road closed sign was "malfunctioning" within the meaning of § 13-910(9), because it was not "functioning properly" at the time of the accident in that it was not preventing motorists from using the vacated road.

After the district court denied the motion for new trial, appellants perfected this timely appeal.

## ASSIGNMENTS OF ERROR

Appellants assign, restated and consolidated, that the district court erred in (1) limiting its analysis of the County's entitlement to sovereign immunity only to the issues of whether the road closed sign was up or down and whether the County had a reasonable time to remedy the situation if the sign was down, instead of also determining whether the road closed sign was functioning properly on the day of the accident and whether the County had actual or constructive knowledge that it was not functioning properly and a reasonable amount of time to remedy the problem; (2) finding the propriety of the road closed sign and its compliance with the Manual were not issues on remand; and (3) failing to grant leave to amend the complaint following our remand.

## STANDARD OF REVIEW

[1] In actions brought under the PSTCA, an appellate court will not disturb the factual findings of the trial court unless they are clearly wrong.[12]

[2] Permission to amend a pleading is addressed to the discretion of the trial court, and an appellate court will not disturb the trial court's decision absent an abuse of discretion.[13]

## ANALYSIS

### Sovereign Immunity

This action was brought against the County pursuant to the PSTCA, which waives a political subdivision's sovereign immunity under limited conditions. Certain claims are exempt from the waiver of sovereign immunity and cannot be brought against a political subdivision.[14] These exempt claims are set forth in § 13-910, which provides that the PSTCA shall not apply to:

> (2) Any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused;
>
> . . . .
>
> (9) Any claim arising out of the malfunction, destruction, or unauthorized removal of any traffic or road sign, signal, or warning device unless it is not corrected by the political subdivision responsible within a reasonable time after actual or constructive notice of such malfunction, destruction, or removal. Nothing in this subdivision shall give rise to liability arising from an act or omission of

---

[12] *Blaser v. County of Madison, supra* note 2; *Downey v. Western Comm. College Area*, 282 Neb. 970, 808 N.W.2d 839 (2012).

[13] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012); *Roos v. KFS BD, Inc.*, 280 Neb. 930, 799 N.W.2d 43 (2010).

[14] See, § 13-910; *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011); *Stonacek v. City of Lincoln*, 279 Neb. 869, 782 N.W.2d 900 (2010).

any political subdivision in placing or removing any traffic or road signs, signals, or warning devices when such placement or removal is the result of a discretionary act of the political subdivision.

The County alleged as an affirmative defense that appellants' claims fell within these and other exemptions to the PSTCA's waiver of sovereign immunity.

Although our prior opinion remanded the cause for a new trial on all issues, we specifically directed the district court to "make findings regarding the warning sign issue as these facts relate to the County's claim of sovereign immunity under § 13-910(9)."[15] It is entirely reasonable that the district court did so as a threshold matter before reaching the merits of the claims, because if a political subdivision proves that a claim comes within an exception pursuant to § 13-910, then the claim is barred by sovereign immunity and the political subdivision cannot be liable.[16] After reviewing the evidence, the district court found that the road closed sign which had been posted at the north end of the vacated roadway had been removed "within two to three days prior to the day of the accident or on that day" and that the County "was not notified that the sign was down during this time period." The court further concluded that because the County had no actual or constructive notice that the sign was down, it "had no reasonable time to remedy the same." Appellants do not specifically assign that these factual findings were clearly erroneous, and we conclude they were not.

But appellants contend that the district court's analysis did not go far enough. They argue that the district court "failed to address whether the sign was functioning properly."[17] In this regard, they rely on a passage in our prior opinion stating that the district court should determine "whether the County had

---

[15] *Blaser v. County of Madision, supra* note 2, 285 Neb. at 301, 826 N.W.2d at 563.

[16] See *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

[17] Brief for appellants at 27.

actual or constructive knowledge that its road closed sign at the north end of the vacated road was not functioning properly on the day of the accident."[18] Although we acknowledge our use of the phrase "functioning properly" may have been somewhat imprecise, clearly, a warning sign which has been removed without authorization of the political subdivision which erected it is not "functioning properly."

But appellants contend it means more. Relying on our use of the phrase "functioning properly," they assert that the district court erred in its interpretation of the word "malfunction" as it is used in § 13-910(9). They argue that there was a "malfunction" of the road closed sign, because even when it was in place, it was "not functioning properly" in that it did not prevent motorists from entering the vacated roadway. And they contend that the County had actual knowledge of this "malfunction" in ample time to take remedial measures which would have prevented the accident, thereby making § 13-910(9) inapplicable.

[3] But this argument necessarily implicates the § 13-910(2) discretionary function exception to the waiver of sovereign immunity which the County pled as an affirmative defense. Some background is helpful to understand why this is so. Neb. Rev. Stat. § 60-6,121 (Reissue 2010) provides: "Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdictions as they deem necessary to indicate and to carry out the provisions of the Nebraska Rules of the Road or to regulate, warn, or guide traffic." Section 60-6,121 further provides that "[a]ll such traffic control devices erected . . . shall conform with the [M]anual." We have held that this statute is a legislative grant of discretion to political subdivisions with respect to the installation of traffic control devices.[19]

---

[18] *Blaser v. County of Madison, supra* note 2, 285 Neb. at 292, 826 N.W.2d at 558.

[19] See, *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012); *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002). See, also, *Blaser v. County of Madison, supra* note 2.

Thus, the placement of traffic control devices is a discretionary function, although once a decision to utilize a particular device has been made, the device is required to conform to the Manual.[20]

We decline appellants' invitation to equate "malfunction" as used in § 13-910(9) with a lack of efficacy, because to do so would negate the § 13-910(2) discretionary function exception. The County had complete discretion in determining what type of traffic control device to use, or whether to use any traffic control device at all. Although any device it chose to utilize had to comply with the specifications of the Manual for that device,[21] the Manual does not establish legal requirements for the use of any specific device, but, rather, contemplates the exercise of engineering judgment in determining whether to use a particular traffic control device at a particular location.[22] Thus, even if the County had come to the conclusion that the sign which it chose to use was not effective in keeping motorists off the vacated road, it had complete discretion to decide whether to keep the sign or to utilize some alternative means, such as a different type of sign or a barricade. The fact that the sign may not have been effective when it was in place cannot constitute a "malfunction" within the meaning of § 13-910(9).

Appellants also contend that the road closed sign which the County erected at the north end of the vacated road did not conform to the Manual. There is evidence that the road closed sign which Madison County erected was yellow and diamond shaped, whereas the Manual indicates a rectangular black and white sign was appropriate. But we need not determine in this case whether the sign erected complied with the Manual, because any deviation from the specifications of the Manual is immaterial. The district court found the sign had been removed without the knowledge or authorization of the County 2 or 3

---

[20] *Shipley v. Department of Roads, supra* note 19; *Tadros v. City of Omaha*, 269 Neb. 528, 694 N.W.2d 180 (2005).

[21] *Id.*

[22] *Shipley v. Department of Roads, supra* note 19.

days prior to the accident. Because the sign was not up on the date of the accident, the fact that it may have deviated from the specifications of the Manual with respect to color and shape could not, as a matter of law, have been a proximate cause of the accident.

We conclude that the district court complied with our mandate by making a threshold determination of whether the County retained sovereign immunity with respect to appellants' claims. Its resolution of that issue in favor of the County was based upon factual findings which are not clearly erroneous, and the court made no error of law.

### Denial of Leave
### to Amend

The district court did not abuse its discretion in denying appellants' motion for leave to amend their complaint. Their proposed new allegations that the County failed to prevent motorists from entering the road or take action after learning that motorists were using the road despite the presence of a road closed sign implicate discretionary functions, for the reasons explained above. Their allegation that the County negligently failed to inspect the sign is subsumed within the district court's finding that the sign was removed within 2 to 3 days prior to the accident without the County's actual or constructive knowledge. Finally, the proposed allegation that the sign did not comply with the specifications of the Manual is entirely irrelevant given the court's finding that the sign was not in place at the time of the accident.

## CONCLUSION

As we noted in *Shipley v. Department of Roads*[23] and *McCormick v. City of Norfolk*,[24] because immunity necessarily implies that a "wrong" has occurred, some tort claims against political subdivisions will inevitably go unremedied. That is the circumstance here. Clearly, the County could have exercised its discretion to take additional precautionary measures

---

[23] *Id*.

[24] *McCormick v. City of Norfolk, supra* note 19.

which may have prevented this accident. But because it retains sovereign immunity with respect to such discretionary functions, it cannot be held legally liable for its inaction. For these reasons, we affirm the judgment of the district court.

AFFIRMED.

HEAVICAN, C.J., not participating.