GLADYS L. WYATT, EXECUTRIX OF THE ESTATE OF
JOHN N. WYATT, DECEASED, APPELLANT. V.
BURLINGTON NORTHERN, INC., ET AL., APPELLEES.

306 N.W.2d 902

Filed June 19, 1981.   No. 43402.

Wright & Simmons for appellant.

Knudsen, Berkheimer, Beam, Richardson & Enda-cott for appellee Burlington.

Holtorf, Kovarik, Nuttleman & Ellison, P.C., for appellee Shires.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This is an appeal in a wrongful death action. The plaintiff's decedent, John Wyatt, was killed in a railroad crossing accident when the pickup truck which he was driving south on 21st Avenue was struck broadside by an eastbound Burlington Northern train. The accident happened shortly after 5 p.m. on January 30, 1974, at the 21st Avenue crossing of the Burlington Northern tracks east of Scottsbluff, Nebraska. The defendants are the railroad company and the engineer, John G. Shires.

At the close of the plaintiff's evidence the trial court dismissed the plaintiff's amended petition on the motions of the defendants. The plaintiff has appealed. The assignments of error relate to the dismissal of the petition and the refusal of the trial court to admit documentary evidence containing statistical information concerning railroad crossing accidents and fatalities.

The record shows that 21st Avenue, also known as the sugar factory road, is a two-lane gravel road running north and south. The railroad tracks run slightly southeast to northwest and cross 21st Avenue at an angle of approximately 67 degrees. The crossing was marked by a standard railroad crossbuck sign which was located just north of a spur track or siding which crossed 21st Avenue approximately 15 feet north of the main line track. A second siding or spur track that leads into the sugar factory crosses 21st Avenue approximately 760 feet north of the main line track. The sugar factory spur was marked by a separate warning sign. A paved highway known as the South Beltline Highway, runs parallel to the main track and approximately 100 feet south. A stop sign on 21st Avenue protects the intersection at the Beltline highway.

There is a "dump" or raised area consisting of dirt, rock, and pieces of metal west of 21st Avenue and north of the tracks which to some extent obstructs the vision of traffic approaching the crossing from the north. The evidence, however, is undisputed that from a point 300 feet north of the crossing Wyatt had a clear and unob-

structed view of the track from the crossing west to a point 400 feet west of the crossing.

The train which was involved in the accident consisted of an "SD" type diesel engine, a loaded hopper car, and a way car or caboose. The entire train was approximately 134 feet long and 14 feet high. The train had left Bayard, Nebraska, that morning and proceeded west to Morrill, Nebraska. The train was returning to Bayard, Nebraska, when the accident happened. The locomotive had only one set of controls and when operated with the short hood forward the controls were on the right side of the locomotive. Since there were no facilities to turn the locomotive at Morrill, the locomotive was operated with the long hood forward on the return trip to Bayard, Nebraska.

The engineer in charge of the locomotive at the time of the accident was the defendant Shires, but the locomotive was actually being operated by the fireman, James Butcher. The engineer's seat was constructed so that it would slide forward or backward and swivel to the right or left. To operate the locomotive with the long hood forward, Butcher turned the engineer's seat and slid it back toward the short hood so that he could look in the direction that the locomotive was traveling.

As the train approached the 21st Avenue crossing, it was proceeding at a speed of approximately 26 to 28 m.p.h. The warning bell and the headlight were operating. The locomotive was also equipped with either a flashing amber light on top of the cab or an oscillating headlight, which was operating. At the whistle post approximately 1,200 feet west of the crossing, Butcher began to blow the whistle and continued to do so until the locomotive reached the crossing.

Both Shires and Butcher were looking out the windows of the cab of the locomotive to the northeast and saw Wyatt approaching the crossing from the north at a speed of approximately 30 m.p.h. or better. Shires testified that when the locomotive was 200 feet or less west of the crossing, Wyatt was approximately 300 feet north

of the crossing. At that time Shires said to Butcher, "I don't think he's going to stop." At about the same time Butcher placed the brakes in "emergency" which resulted in a maximum application of the brakes to all wheels of the train and disconnected the power in the locomotive from the traction motors. Wyatt did not slow down or stop and the collision occurred.

Although the sun was shining, it was low in the southwest and at such an angle that Wyatt would have had to look to the right of the sun to see the train. Both Shires and Butcher testified that they watched Wyatt from the point 300 feet north of the crossing, and Wyatt did not look to the west and did not slow down as he approached the crossing. After the accident there were no skid marks or other indication that Wyatt had attempted to stop.

The trial court sustained the motions of the defendants for a directed verdict and dismissed the petition on the ground that the plaintiff's decedent Wyatt was guilty of contributory negligence more than slight as a matter of law.

The rules which are applicable to motorists approaching railroad grade crossings in this state are well settled. In *Thomas v. Burlington Northern R.R., Inc.*, 203 Neb. 507, 510-11, 279 N.W.2d 369, 372 (1979), we said: "It is a well-established rule in Nebraska that a traveler on a highway, when approaching a railroad crossing, has a duty to look and listen for the approach of trains. He must look, where by looking he could see, and listen, where by listening he could hear, and if he fails without a reasonable excuse to exercise such precautions, then he is guilty of contributory negligence more than slight, as a matter of law, and no recovery can be had for damages resulting from a collision with a passing train. Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co., 161 Neb. 451, 73 N.W.2d 679. See, also, Loudy v. Union P. R. R. Co., 146 Neb. 676, 21 N.W.2d 431; McIntosh v. Union P.R.R. Co., 146 Neb. 844, 22 N.W.2d 179; Mundt v. Chicago, R. I. & P. R. Co., 136 Neb. 478, 286 N.W. 691;

Moreland v. Chicago & N. W. R. Co., 117 Neb. 456, 220 N.W. 692; Askey v. Chicago, B. & Q. R. Co., 101 Neb. 266, 162 N.W. 647; Chicago, B. & Q. R. Co. v. Schwanenfeldt, 75 Neb. 80, 105 N.W. 1101."

Neb. Rev. Stat. § 39-655(1) (Reissue 1978), enacted in 1973, provides in part: "(1) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances set forth in this section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad and shall not proceed until he can do so safely. The requirements of this subsection shall apply when: . . . (c) A railroad train approaching within approximately one quarter mile of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard; or (d) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."

The statute was clearly applicable to Wyatt in this case. The train was "plainly visible" and had emitted a signal within approximately one quarter of a mile of the crossing which was audible from that distance.

The duty of a motorist approaching a grade crossing is such that even if the train fails to give warning signals of its approach to the crossing, the motorist can not recover if he recklessly fails and neglects to have his vehicle under control where by looking and listening at the proper time he could have seen the approaching train in time to stop before reaching the crossing. *Milk House Cheese Corp. v. Chicago, B. & Q.R.R. Co.*, 161 Neb. 451, 73 N.W.2d 679 (1955).

The ordinary rules of the road which are applicable to motor vehicles crossing at highway intersections have no application to railroad trains approaching grade crossings. Although railroad trains may not have an absolute right-of-way at grade crossings under all conditions, there is no duty on the part of the engineer operating the train to yield the right-of-way until the situation

is such as to indicate to a reasonably prudent person that to proceed would probably result in a collision. At that time it becomes the duty of the engineer to exercise ordinary care to avoid an accident, even to the extent of yielding the right-of-way. *Carter v. Chicago, B. & Q.R.R. Co.*, 175 Neb. 188, 121 N.W.2d 44 (1963). The defendants in this case complied fully with these rules and did everything possible in an effort to stop the train when it became reasonably apparent that Wyatt might not stop before reaching the crossing.

Much of the plaintiff's argument is directed to her contention that Wyatt was hard of hearing and may not have heard the whistle or warning bell because he was probably driving the truck with the windows closed and the radio turned on at a high volume. This, of course, would not excuse the decedent but merely tended to prove contributory negligence. If Wyatt was hard of hearing he was under an obligation to maintain an increased vigilance for warning signals. To place himself in a situation where he would be unable to hear warning signals would not be a defense or excuse for his failure to use due care.

The plaintiff further argues that the sun, which was low in the west, may have prevented the decedent from clearly seeing the train, which was in plain sight. The sun was a condition and, like snow, fog, or blinding lights, would not excuse Wyatt's failure to see the train. *C. C. Natvig's Sons, Inc. v. Summers*, 198 Neb. 741, 255 N.W.2d 272 (1977).

The evidence shows, quite conclusively, that Wyatt drove his truck onto the crossing directly in front of the train in total disregard of the crossing sign and all of the warning signals which were being given by the railroad employees. In fact, the evidence indicates that it is probable that Wyatt would not have been able to stop at the stop sign at the Beltline highway intersection. From a point approximately 300 feet north of the crossing, Wyatt did not look to the right or make any attempt to slow down or stop before reaching the railroad crossing.

The failure to maintain a proper lookout and control over his vehicle was contributory negligence more than slight as a matter of law and sufficient to bar any recovery.

Although the motion was sustained on the basis of the contributory negligence of the deceased, there was no substantial evidence of negligence on the part of the railroad company and its employees. The train was being operated in a careful manner and at a reasonable rate of speed. When it appeared that the decedent would not stop before reaching the crossing, the train brakes were placed in "emergency" in an effort to avoid the accident.

The documentary evidence the plaintiff attempted to introduce, which contained statistical information concerning grade crossing accidents and fatalities, was not relevant to any issue before the court and was properly excluded.

The judgment of the District Court is affirmed.

AFFIRMED.