GAIL FICKLE, BOTH INDIVIDUALLY AND AS PARENT AND GUARDIAN OF
JACOB WAGNER, APPELLEE AND CROSS-APPELLANT, V. STATE OF
NEBRASKA, APPELLANT AND CROSS-APPELLEE.

759 N.W.2d 113

Filed September 28, 2007.    No. S-04-1250.

Jon Bruning, Attorney General, Michele M. Lewon, and Matthew F. Gaffey for appellant.

Douglas J. Peterson and Joel Bacon, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Case No. S-04-1250 is before us on the motion for rehearing filed by the State of Nebraska, appellant, regarding our opinion reported at *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007). We overrule the motion, but for purposes of clarification, modify the opinion as follows:

That portion of the opinion designated "(a) Future Economic Damages," *id.* at 1008-11, 735 N.W.2d at 771-73, is withdrawn, and the following language is substituted in its place:

(a) Future Economic Damages

Fickle asserts that the amount of future economic damages awarded was inadequate. At the time of trial, Wagner was 20 years old. George Wolcott, a neurologist, testified that Wagner could expect to live "into his 60's." The evidence established that Wagner's life expectancy from the time of trial was approximately 40 years. Fickle claims that Wagner's future medical care and loss of wages require a much greater award than was given by the district court.

*(i) Future Medical Care*

The evidence established that Wagner's future medical expenses (including the cost of residential care at Village Northwest Unlimited) would be between $193,610 and $198,355 per year. This range did not reflect inflation or future increases in cost. These amounts were shown in a "Life Care Plan" compiled by Robin Welch-Shaver. Welch-Shaver has a bachelor of science degree in nursing and is a certified life care planner. The plan was formulated using information from Fickle, Wagner, the providers at Village Northwest Unlimited, and Drs. Wolcott, Lester Sach, Sarah Zoelle, and Lyal Leibrock.

The life care plan considered that Wagner would remain a resident of Village Northwest Unlimited, which provided appropriate treatment, including 24-hour nursing care, physical and occupational therapy, cognitive-skills training, and other services. The plan also was based upon the fact that Wagner would always need a residential setting in which he would receive services similar to those he was receiving from Village Northwest Unlimited. The cost associated with Wagner's need for this residential setting was $462 per day, which equated to an annual cost of $168,630.

Evidence at trial suggested that Wagner had been receiving Medicaid payments and that Village Northwest Unlimited was charging him at the Medicaid rate, which was lower than the rate paid by private parties. The State argues that the lower Medicaid rate should have been considered in calculating damages instead of the private-party rate. This argument has no merit.

The private-party rate, not the Medicaid rate, is the proper rate to use in calculating Wagner's future medical expenses. Under the collateral source rule, the fact that the party seeking recovery has been wholly or partially indemnified for a loss by insurance or otherwise cannot be set up by the wrongdoer in mitigation of damages. *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 560 N.W.2d 451 (1997). Social legislation benefits, including payments by Medicare and Medicaid, are excluded by the

collateral source rule. See, *Bynum v. Magno*, 106 Haw. 81, 101 P.3d 1149 (2004) (holding that collateral source rule prohibited reducing patient's damages award to reflect discounted Medicare and Medicaid payments); Restatement (Second) of Torts § 920A, comment *c.* (1979). Moreover, once Fickle receives the judgment awarded in this case, Wagner may no longer be eligible for Medicaid (or Village Northwest Unlimited's Medicaid rate), because eligibility standards take into account the resources available to a Medicaid applicant or recipient. See *Wilson v. Nebraska Dept. of Health & Human Servs.*, 272 Neb. 131, 718 N.W.2d 544 (2006).

The State also claims that certain medical expenses should not be included because they were controverted at trial. For instance, the State points out that Wagner was not required to take the following medications and supplements as a result of the accident: "Aterol," multivitamins, and calcium supplements. It further argues that the cost of future neurologic and urologic treatment should not have been included in the Life Care Plan because there was insufficient medical evidence that such care would be necessary. The State also asserts that the cost of a motorized wheelchair should not be included as a future medical expense because one of his physicians testified that he should continue to use a manual wheelchair. The State further claims that the projected cost of a customized minivan to accommodate Wagner's special needs should not have included the base cost of the vehicle before customization. Excluding all of the items of future medical expense which the State contests, there remains essentially uncontroverted evidence that Wagner's future medical expenses without adjustment for inflation will be between $7,398,320 and $7,493,120.

### (ii) Lost Earning Capacity

Evidence showed that Wagner was unable to earn a living in the labor market due to his injuries. At trial, the State contested whether Wagner would have been a skilled laborer. At the time of the accident, Wagner was

a high school student who had difficulties in school and whose academic performance was not stellar. He planned to obtain a diploma through GED and pursue training through Job Corps to acquire a skill. Fickle argues that the evidence presented indicated that even if Wagner did not complete vocational training or obtain a diploma through GED, he could have expected to make at least $8 per hour as an unskilled laborer. A laborer working at this rate would earn a minimum of $16,000 per year. Over a period of 40 years, Wagner's earnings would amount to at least $640,000.

The State argues that Wagner's potential earnings should have been based upon the minimum wage. But the State fails to direct us to evidence in the record indicating that minimum wage was all that Wagner could have expected to earn. The record does not support a reasonable inference that Wagner's future earning capacity over his 40-year life expectancy was less than $640,000.

### (iii) Total Future Economic Damages

There is competent and essentially uncontroverted evidence that future medical expenses for Wagner would be between $7,398,320 and $7,493,120 over a 40-year life expectancy and that he sustained a loss of future earning capacity of at least $640,000. Thus, without consideration for inflation, the evidence presented at trial established Wagner's future economic damages would be between $8,038,320 and $8,133,120.

### (iv) Reduction to Present Value

The general rule in Nebraska is that an award for future damages must be reduced to its present value. *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989). Present value is the current worth of a certain sum of money due on a specified future date after taking interest into consideration. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

Present value must be determined because the money awarded can be invested and earn interest. A present

award should also consider the fact that inflation will increase the expenses incurred by the plaintiff. Although the plaintiff can earn interest, the value of the dollar will decline because of inflation. See, generally, G. Michael Fenner, *About Present Cash Value*, 18 Creighton L. Rev. 305 (1985) (discussing various approaches for determining present value). These factors are left to the judgment of the trial court but should, nevertheless, be considered in the amount of the award.

*(v) Conclusion Regarding Future Economic Damages*

Giving the State the benefit of reasonably disputed items, we conclude that future economic damages proved at trial are far in excess of the amount awarded by the district court. Therefore, the award for economic damages did not bear a reasonable relationship to the damages proved at trial.

The remainder of the opinion shall remain unmodified.

FORMER OPINION MODIFIED.

MOTION FOR REHEARING OVERRULED.