MANUELA DOMINGO GASPAR GONZALEZ,
PERSONAL REPRESENTATIVE OF THE
ESTATE OF EFRAIN RAMOS-DOMINGO,
DECEASED, APPELLANT, V. UNION PACIFIC
RAILROAD COMPANY, APPELLEE.

___ N.W.2d ___

Filed December 18, 2015.    No. S-14-986.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

2. **Negligence: Proof.** To entitle a defendant to judgment under the comparative negligence statutory scheme, the defendant must prove that any contributory negligence chargeable to the plaintiff is equal to or greater than the total negligence of all persons against whom recovery is sought.

3. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

4. ____. On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

5. **Negligence: Words and Phrases.** Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury.

6. **Negligence: Proximate Cause.** A plaintiff is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his

or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause.

7. **Actions: Negligence.** Nebraska's comparative negligence law, Neb. Rev. Stat. §§ 25-21,185 to 25-21,185.12 (Reissue 2008), applies only to civil actions in which contributory negligence is a defense.

8. **Negligence: Liability.** An important factor to be considered in apportioning fault is the extent to which each person's risk-creating conduct failed to meet the applicable legal standard.

9. **Negligence: Minors.** A child is required to exercise that degree of care which a person of that age would naturally and ordinarily use in the same situation under the same circumstances; the degree of care required increases when an actor is dealing with a dangerous activity.

10. **Trial: Negligence: Evidence.** Where reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom recovery is sought, the apportionment of fault must be submitted to the jury. Only where the evidence and the reasonable inferences therefrom are such that a reasonable person could reach only one conclusion, that the plaintiff's negligence equaled or exceeded the defendant's, does the apportionment of negligence become a question of law for the court.

Appeal from the District Court for Colfax County: MARY C. GILBRIDE, Judge. Reversed and remanded for further proceedings.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Snyder, Chaloupka, Longoria & Kishiyama, P.C., L.L.O., and Horacio J. Wheelock, of Law Office of Horacio Wheelock, for appellant.

Mark E. Novotny and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, and CASSEL, JJ.

WRIGHT, J.
## NATURE OF CASE
On July 27, 2005, 13-year-old Efrain Ramos-Domingo (Efrain) was struck and killed by a Union Pacific Railroad

Company (Union Pacific) train in Schuyler, Nebraska. Manuela Domingo Gaspar Gonzalez (Plaintiff), Efrain's mother, as personal representative of Efrain's estate, filed a wrongful death action against Union Pacific. Union Pacific moved for summary judgment on the wrongful death claim, which motion the district court sustained. The court concluded that as a matter of law, Union Pacific had not violated its standard of care, and that Efrain had violated his duty to look and listen for the oncoming train. We reverse, and remand for further proceedings.

## SCOPE OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *DMK Biodiesel v. McCoy*, 290 Neb. 286, 859 N.W.2d 867 (2015); *Dresser v. Union Pacific RR. Co.*, 282 Neb. 537, 809 N.W.2d 713 (2011).

[2] To entitle a defendant to judgment under the comparative negligence statutory scheme, the defendant must prove that any contributory negligence chargeable to the plaintiff is equal to or greater than the total negligence of all persons against whom recovery is sought. *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007), *modified on denial of rehearing* 274 Neb. 267, 759 N.W.2d 113.

[3] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Estate of Powell v. Montange*, 277 Neb. 846, 765 N.W.2d 496 (2009).

## FACTS

At the railroad crossing in Schuyler, there are two sets of tracks, one for eastbound trains and one for westbound

trains. On the date of the accident, an eastbound train was on the south track and a westbound train was on the north track. They passed each other just east of the railroad crossing. At approximately 1 p.m., Efrain proceeded to cross from the south set of railroad tracks after the eastbound train had passed. Efrain was struck and killed by the westbound train as he tried to cross the north set of tracks.

In Plaintiff's initial complaint, she alleged claims for wrongful death and breach of fiduciary duty. The district court granted a motion to dismiss filed by Union Pacific with respect to the wrongful death claim and granted Union Pacific's motion for summary judgment on the breach of fiduciary duty claim. Plaintiff appealed. We affirmed the district court's order in the breach of fiduciary duty claim, but reversed the court's order regarding Plaintiff's wrongful death claim. See *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

In the operative complaint filed after remand, Plaintiff alleged that Efrain's death was caused by Union Pacific's negligence. It was alleged that the noise of one train was loud enough to prevent a pedestrian from determining whether there was one train or two at the crossing.

Both parties offered evidence at a summary judgment hearing. The district court took judicial notice of all the exhibits that had been offered by the parties in prior hearings. Included in the evidence was a summation of data collected by Union Pacific from an event recorder on the eastbound train. According to that summation, the last car of the eastbound train cleared the crossing 7.1 seconds prior to the time the westbound train struck Efrain. The lead locomotive on the westbound train became even with the last car of the eastbound train approximately 250 feet east of the crossing. The westbound train was traveling at 59 m.p.h., and there was evidence that the view of the westbound train would have been obscured to one waiting at the south side of the crossing until approximately 2.9 seconds prior to the time the train entered the crossing.

Union Pacific offered the deposition testimony of the conductor and the engineer of the westbound train. The conductor did not recall seeing the eastbound train. He stated that 5 or 6 seconds before the westbound train entered the crossing, he could see cars stopped on both sides of the railroad tracks and see the crossing gates were down. A second or two before the westbound train entered the crossing, he saw Efrain maneuver his bicycle around the driver's side of a car that was stopped in the first position south of the closed gate and then enter the crossing. Efrain was not on the sidewalk but, instead, was in the middle of the street as he entered the crossing.

The conductor believed the train's horn was blowing, and when he stood up, he saw Efrain and made eye contact with him. The conductor testified that Efrain "got off the seat of his bicycle with both feet on the pedals" and that he thought the boy was going to stop. He stated that Efrain pedaled a few more times and, at the last second, he took his eyes off the train and tried to make it across. The conductor thought for a split second that Efrain might make it, and then he heard the collision.

The westbound train's engineer testified he did not recall seeing an eastbound train. He did not see Efrain, but he did see two boys cross safely as the train approached. He recalled those boys crossing either before the gates went down or as the gates were going down. He then heard the conductor yell that he saw a boy on the tracks, and he immediately applied the emergency brake. The engineer reviewed the data from the train's event recorder and stated that it appeared the train horn stopped sounding 2 or 3 seconds before the accident.

A claims representative for Union Pacific stated in an affidavit that based upon his investigation, the westbound train's horn was blowing "at the appropriate time as it approached the crossing." He averred that the gates, lights, and other signals at the crossing were actively and properly working. Union Pacific's manager of signal maintenance also testified

that all the lights and signals at the crossing were working properly on the day of the accident.

At the time of the accident, one witness was stopped in a vehicle at the south side of the crossing. In his affidavit, he stated that he saw several boys try to cross the tracks after the eastbound train passed and that, at that time, it was hard to see the approaching westbound train because the eastbound train was blocking the view of the tracks looking eastward.

Plaintiff's expert, Charles Culver, was a locomotive engineer with 44 years of railroad industry experience and a railroad safety instructor. He explained how train crews warn vehicular and pedestrian traffic of a train's approach. Culver opined that based on the configuration of the tracks at the crossing, the view of the approaching westbound train would have been obstructed "until the eastbound train had cleared the leading locomotive of the westbound train."

Culver stated that Efrain was not provided with the required warnings of the westbound train's approach to the crossing. He stated that applicable federal regulations and Union Pacific's general operating rules in effect in 2005 required a train horn to sound for at least 15 seconds prior to entering a crossing and to sound the horn all the way through the crossing. Culver reviewed the horn activation records from the westbound train and concluded that its horn sounded for 12 seconds prior to entering the intersection, but did not sound for the 3 seconds prior to the collision. He opined that the westbound train approached the crossing at a rate of 86.7 feet per second and that a proper audible warning was "crucial for safe railroad operation." He further opined that Union Pacific's failure to comply with the rules and regulations relative to audible warnings was a matter of negligence on the part of Union Pacific.

The district court entered summary judgment in favor of Union Pacific. The court concluded that Union Pacific did not breach its standard of care. It also concluded that Plaintiff's assertions about the sounding of the train's horn and the

reduced visibility at the crossing were "speculative [at] best and . . . not sufficient to create a material issue of fact on the issue of breach of the standard of care." It concluded that as a matter of law, Efrain violated his duty to look and listen for the approaching train and to obey the crossing gate by maneuvering around the closed gate and attempting to cross the intersection. Plaintiff filed this timely appeal.

## ASSIGNMENTS OF ERROR

Plaintiff assigns as error, summarized and restated, that the district court erred in finding there was no genuine issue of material fact as to whether Union Pacific breached its duty of care and erred in finding as a matter of law that Efrain's failure to follow the safety rules was contributory negligence that barred his recovery.

## ANALYSIS

[4] On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[5,6] The issue is whether Efrain was, as a matter of law, contributorily negligent to such a degree as to bar his recovery. Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002). A plaintiff is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her

injuries as a proximate cause. *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

[7] Nebraska's comparative negligence law, Neb. Rev. Stat. §§ 25-21,185 to 25-21,185.12 (Reissue 2008), applies only to civil actions in which contributory negligence is a defense. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001). To entitle a defendant to judgment under the comparative negligence statutory scheme, the defendant must prove that any contributory negligence chargeable to the plaintiff is equal to or greater than the total negligence of all persons against whom recovery is sought. *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007), *modified on denial of rehearing* 274 Neb. 267, 759 N.W.2d 113.

Therefore, in order for Union Pacific to be entitled to summary judgment, it had the burden of proving under the facts viewed most favorably to Efrain that Efrain's negligence was equal to or greater than the negligence of Union Pacific.

[8,9] An important factor to be considered in apportioning fault is the extent to which each person's risk-creating conduct failed to meet the applicable legal standard. *Tadros v. City of Omaha*, 269 Neb. 528, 694 N.W.2d 180 (2005). A child is required to exercise that degree of care which a person of that age would naturally and ordinarily use in the same situation under the same circumstances; the degree of care required increases when an actor is dealing with a dangerous activity. *Humphrey v. Burlington Northern RR. Co.*, 251 Neb. 736, 559 N.W.2d 749 (1997). Union Pacific was required to exercise that degree of care imposed upon a railroad by federal regulations and its own code of operating instructions to provide proper and adequate warnings of its trains' approach to railroad crossings.

In considering the negligence of the parties, we compare the duty of care imposed upon a 13-year-old boy on a bicycle to the duty required of a railroad company whose train is approaching a pedestrian and automobile crossing. We view the evidence in a light most favorable and give the benefit of all

reasonable inferences deducible from the evidence to the party against whom the judgment was granted.

The evidence offered at the summary judgment hearing showed that just moments before Efrain was struck by the train, two other children crossed with their bicycles after the eastbound train had passed. Efrain also crossed the south tracks but was killed as he attempted to cross the north set of tracks upon which the westbound train was approaching.

Generally, it is the duty of a traveler on a highway, or a pedestrian in this case, when approaching a railroad crossing, to look and listen for the approach of trains. He or she must look where by looking, he or she could see, and listen where by listening, he or she could hear. See, *Kloewer v. Burlington Northern, Inc.*, 512 F.2d 300 (8th Cir. 1975); *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990).

Efrain had a duty to look and listen for the oncoming train and to stop at the crossing gate. It can reasonably be inferred that a 13-year-old boy knows that railroad crossings are dangerous. And such individual has a duty not to proceed to cross the railroad tracks until it is safe to do so.

On the other hand, it is undisputed that Union Pacific knew the dangers associated with a railroad crossing and that it must sound its horn prior to and through the crossing. Plaintiff offered evidence that applicable federal regulations, combined with Union Pacific's general operating rules in effect in 2005, required the train horn to sound for at least 15 seconds prior to entering the crossing and to sound all the way through the crossing. Plaintiff's expert testified that the horn activation records from the westbound train showed the horn sounded for 12 seconds prior to entering the intersection, but did not sound for the 3 seconds prior to the accident. Plaintiff's expert opined that a proper audible warning was *crucial for safe railroad operation*.

Plaintiff offered evidence that two other children crossed the tracks just before Efrain. There was evidence that when

Efrain attempted to cross the tracks, his view was blocked by the departing eastbound train on the tracks until the last car of the eastbound train passed the first locomotive of the westbound train. A motor vehicle operator who was stopped at the south side of the crossing said it was hard to see the westbound train because the eastbound train blocked the view of the westbound train.

The district court erred in concluding as a matter of law that Union Pacific did not violate its standard of care. There was evidence that the view of the westbound train was obscured and that the train failed to sound its horn for 3 seconds prior to the collision. Union Pacific had a duty to properly sound its horn as the train approached the railroad crossing in order to warn of its approach. The failure to properly sound the horn through the crossing was evidence that Union Pacific was negligent.

Efrain had a duty to look before he crossed the tracks. But there was evidence that his view of the westbound train was obstructed. He had 7.1 seconds in which to safely cross both tracks. It can reasonably be inferred that Efrain's view of the westbound train was obstructed for 4 seconds, until the last car of the eastbound train cleared the crossing and passed the first engine on the westbound train. At this point, the westbound train was 250 feet east of the crossing. The train was traveling at 86.7 feet per second. It can reasonably be inferred that after the eastbound train passed the crossing, Efrain had less than 3 seconds in which to see and react to the westbound train before he was killed.

Efrain had a duty to listen for the train's approach. But there was evidence that the horn was not blown for 3 seconds prior to entry of the intersection. It can reasonably be inferred that Efrain did not hear the train as it approached because its horn was not sounded. There was sufficient evidence to establish a reasonable inference that Union Pacific was negligent in failing to properly sound its horn and that its negligence was a proximate cause of Efrain's death.

In apportioning fault, we examine the extent to which Efrain's and Union Pacific's conduct failed to meet the applicable standards of care. See *Tadros v. City of Omaha*, 269 Neb. 528, 694 N.W.2d 180 (2005). Efrain's conduct is to be compared to that of a 13-year-old boy, and Union Pacific's conduct is to be compared to the experience of a railroad with over a century of operation and its knowledge of the dangers of railroad crossings. It can reasonably be inferred that Efrain's duty to see was hindered by the eastbound train and his duty to hear was hindered by the westbound train's failure to warn of its approach by properly sounding its horn. It can also be inferred that Union Pacific was negligent in failing to sound its horn continuously for 15 seconds prior to the railroad crossing.

The district court's conclusion that Union Pacific did not breach its standard of care was in effect a determination that Efrain's negligence was the sole proximate cause of his death. This determination failed to consider that there was a reasonable inference that Union Pacific failed to properly warn of the westbound train's approach to the crossing.

[10] Where reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom recovery is sought, the apportionment of fault must be submitted to the jury. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996). Only where the evidence and the reasonable inferences therefrom are such that a reasonable person could reach only one conclusion, that the plaintiff's negligence equaled or exceeded the defendant's, does the apportionment of negligence become a question of law for the court. *Id*.

There are cases in which this court has considered the comparative negligence of a minor. But it is clear that each case must be considered on the facts presented. In *Humphrey*

*v. Burlington Northern RR. Co.*, 251 Neb. 736, 559 N.W.2d 749 (1997), a child almost 11 years old was injured when she tried to jump onto a moving train. There, we concluded as a matter of law that the plaintiff was guilty of contributory negligence sufficient to bar recovery from the railroad company. She had repeatedly been warned that trains were dangerous, and she admitted to knowing she could get hurt by jumping onto a train. She had made an earlier attempt to jump onto a train and let go of the ladder because it felt like her arm was "'ripped off.'" *Id.* at 738, 559 N.W.2d at 752. But most significantly, there was no evidence that the defendant was negligent.

Thus, *Humphrey* is readily distinguishable. We did not address the comparative negligence between the minor and the railroad company because the railroad was not negligent. It was uncontradicted that the minor's persistence in trying to climb on the ladder of a railroad car while it was moving required the district court to declare, as a matter of law, the minor guilty of contributory negligence sufficient to bar recovery. Her negligence was the sole proximate cause of her injury.

But this case is different. Plaintiff was entitled to the reasonable inference that the intersection was obscured by the eastbound train and that the westbound train became visible only 2.9 seconds before the collision. Plaintiff was entitled to the inference that Union Pacific did not properly blow its horn for 3 seconds before the collision. Reasonable minds could draw different inferences and conclusions from the evidence as to the degree of negligence of Union Pacific and the negligence of Efrain.

It was for the trier of fact to determine whether Efrain's negligence when compared to the negligence of Union Pacific equaled or exceeded that of Union Pacific. Plaintiff was entitled to all reasonable inferences from the evidence presented. And since reasonable minds could draw different inferences and conclusions from this evidence, the issue of the comparative

negligence of the parties must be submitted to the jury. See *Traphagan v. Mid-America Traffic Marking, supra*.

## CONCLUSION

Reasonable minds could draw different conclusions and inferences when comparing the negligence of Efrain and the negligence of Union Pacific. The district court erred in deciding as a matter of law that Union Pacific was not negligent and that Efrain was contributorily negligent sufficient to bar his recovery. For the above reasons, we reverse the judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.

HEAVICAN, C.J., dissenting.

I agree that the record, viewed in the light most favorable to Manuela Domingo Gaspar Gonzalez, demonstrates there is a genuine issue of material fact as to whether Union Pacific breached its duty to sound the train horn in accord with its own policies and applicable federal regulations. Specifically, there is an issue of fact as to whether Union Pacific sounded the horn in the proper sequence for the entire 15 seconds before the train entered the crossing, or whether the horn sounded only for 12 seconds, with the last 3 seconds' being silent. That, however, is the only possible duty Union Pacific breached on the record before us. In comparison, it is undisputed that Efrain, a 13-year-old boy, maneuvered around a closed railroad crossing gate and entered the path of an oncoming train that was clearly visible to him for at least 3 seconds. In my opinion, no reasonable fact finder could conclude that Efrain's negligence in completely disregarding the railroad safety features at the crossing and riding his bicycle into the path of an oncoming train did not equal or exceed Union Pacific's alleged negligence in failing to sound the horn in the proper sequence for the entire 15 seconds. I therefore dissent.

The majority opinion immediately states that the issue is whether Efrain was, as a matter of law, contributorily negligent to such a degree as to bar his recovery. I agree that this is the ultimate issue, but I disagree with how the majority analyzes it. A key component of the comparative negligence analysis is the extent to which each party's risk-creating conduct failed to meet the applicable legal standard.[1] It is therefore necessary to first analyze the respective allegations of negligence made by Gonzalez in the complaint in order to determine the precise risk-creating conduct of Union Pacific that is at issue here. Once that conduct is determined, it can then be measured against Efrain's conduct.

### Visual Obstruction

Gonzalez alleged that Union Pacific was negligent in "structuring" the crossing in a manner that allowed trains traveling through the crossing in opposite directions to create visual obstructions for travelers. This court has never held that a railroad violates its standard of care by structuring a crossing in such a manner. Gonzalez cites to no case or federal regulation, and I have found none, finding that a railroad has a duty to prevent two trains from passing in opposite directions on parallel tracks.

Gonzalez relies on *Case v. Norfolk & Western Ry. Co.*,[2] decided by an Ohio appellate court. In *Case*, a driver crossed a double train track after one train had passed and while electric flashers were still operating. The vehicle was then struck by a train traveling on the other track in the opposite direction. The court found that summary judgment in favor of the railroad was improper for a number of reasons, including that there was a fact question as to whether the oncoming

---

[1] *Tadros v. City of Omaha*, 269 Neb. 528, 694 N.W.2d 180 (2005).

[2] *Case v. Norfolk & Western Ry. Co.*, 59 Ohio App. 3d 11, 570 N.E.2d 1132 (1988).

train was "visible" just prior to collision.[3] *Case* did not hold, however, that the railroad had any duty to prevent trains from passing through a crossing in opposite directions on parallel tracks. Rather, the visibility issue was simply part of the larger question of whether the railroad breached the standard of care by failing to place additional safety features or mechanisms, such as a crossing gate, at the crossing.[4] That is not the issue here, as there is no allegation that Union Pacific failed to place proper safety features at the crossing. And it is undisputed that all the safety features in place were properly functioning.

Simply allowing trains to pass in opposite directions on parallel tracks at a railroad crossing does not violate a railroad's duty to use reasonable care under the circumstances.[5] Thus, in my opinion, Union Pacific was entitled to summary judgment on the claim that it was negligent for structuring the crossing in such a manner that trains could simultaneously cross on parallel tracks. And the majority opinion is incorrect to the extent it considers any visual obstruction created by the passing trains to be negligent conduct of Union Pacific.

### Sounding of Train's Horn

Gonzalez relies heavily, as does the majority, on the alleged failure of Union Pacific to comply with federal and internal regulations regarding how and when a train horn should sound at a crossing. I am somewhat reluctant to analyze this allegation of negligence at all, as it was not specifically raised in her complaint. The complaint did, however, allege both that Union Pacific failed to use reasonable care to eliminate the

---

[3] *Id.* at 13, 570 N.E.2d at 1135.

[4] *Case, supra* note 2.

[5] See, generally, *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

danger caused by the visual obstruction and that "the noise of one train was loud enough to prevent a pedestrian from determining whether one train or two was crossing before him." Under our liberal notice pleading rules, this likely was sufficient to raise the issue. The district court clearly agreed, because it addressed the horn issue in its order. This convinces me that we should address the issue as well.

I agree that the record shows a genuine issue of material fact on this issue. Union Pacific's conductor testified that the horn was sounding through the intersection. And a Union Pacific claims representative testified the horn was "blowing at the appropriate time" as it approached the crossing. But Gonzalez' expert opined the horn sounded for only 12 seconds prior to entering the crossing, instead of the 15 seconds required by federal regulations. Her expert's affidavit can reasonably be interpreted to opine that the horn failed to sound in the 3 seconds prior to the accident, but was sounding for the 12 seconds prior to that time. Gonzalez' expert also testified that the horn failed to sound in the sequence required by federal regulations. There is thus a genuine issue of material fact in the record as to whether Union Pacific breached the standard of care with respect to the timing and manner in which it blew the train horn.

### Comparative Negligence

But, as the majority implicitly finds, the mere existence of an issue of material fact as to whether Union Pacific breached its standard of care with respect to the horn does not automatically bar Union Pacific from an award of summary judgment in this action. Here, the district court found Efrain was contributorily negligent as a matter of law to such a degree as to bar his recovery because he maneuvered around the closed crossing gate and violated his duty to look and listen for oncoming trains. Even assuming that the horn failed to blow in the proper sequence and for the final 3 seconds before the accident, I agree with the district court's conclusion.

Contributory negligence is conduct for which the plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury and which, concurring and cooperating with actionable negligence on the part of the defendant, contributes to the injury.[6] A plaintiff is contributorily negligent if (1) she or he fails to protect herself or himself from injury, (2) her or his conduct concurs and cooperates with the defendant's actionable negligence, and (3) her or his conduct contributes to her or his injuries as a proximate cause.[7]

Nebraska's comparative negligence law, Neb. Rev. Stat. §§ 25-21,185 to 25-21,185.12 (Reissue 2008), applies to civil actions in which contributory negligence is a defense.[8] To entitle a defendant to judgment under the comparative negligence statutory scheme, the defendant must prove that any contributory negligence chargeable to the plaintiff is equal to or greater than the total negligence of all persons against whom recovery is sought.[9] An important factor to be considered in apportioning fault is the extent to which each person's risk-creating conduct failed to meet the applicable legal standard.[10] Where reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom recovery is sought, the apportionment of fault must be submitted to the jury. Only where the evidence and the reasonable inferences therefrom are such that a reasonable person could reach only one conclusion, that the plaintiff's negligence equaled or exceeded the

---

[6] *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

[7] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

[8] *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

[9] § 25-21,185.09; *Fickle v. State*, 273 Neb. 990, 735 N.W.2d 754 (2007), *modified on denial of rehearing* 274 Neb. 267, 759 N.W.2d 113.

[10] *Tadros v. City of Omaha, supra* note 1.

defendant's, does the apportionment of negligence become a question of law for the court.[11]

Here, the extent to which each party's conduct failed to meet the applicable legal standard must be evaluated. Union Pacific failed to meet its standard of care in only one respect—failing to properly blow the horn in a specific sequence and for the 3 seconds prior to the accident. How, then, did Efrain fail to meet the applicable legal standard?

A traveler on a highway, when approaching a railroad crossing, has a duty to look and listen for the approach of trains, and the failure to do so without a reasonable excuse constitutes negligence.[12] He or she must look whereby looking, he or she could see, and listen whereby listening, he or she could hear.[13] In addition, § 60-6,170 specifically provides that when a railroad crossing gate is lowered, any person approaching the crossing in a vehicle must stop within 50 feet but not less than 15 feet from the nearest rail and shall not proceed until it is safe to do so. Section 60-6,170 also provides that no person shall drive a vehicle through, around, or under any crossing gate or barrier while it is closed or being closed.[14]

The ordinary rules of the road which are applicable to motor vehicles that cross at highway intersections have no application to railroad trains that approach grade crossings.[15]

---

[11] *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996).

[12] *Dresser v. Union Pacific RR. Co.*, 282 Neb. 537, 809 N.W.2d 713 (2011).

[13] *Kloewer v. Burlington Northern, Inc*., 512 F.2d 300 (8th Cir. 1975); *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990); *Anderson v. Union Pacific RR. Co*., 229 Neb. 321, 426 N.W.2d 518 (1988); *Wyatt v. Burlington Northern, Inc*., 209 Neb. 212, 306 N.W.2d 902 (1981). See, also, Neb. Rev. Stat. §§ 60-6,170 and 60-6,314 (Reissue 2010).

[14] See, also, Neb. Rev. Stat. § 60-6,314 (Reissue 2010) (operator of bicycle is subject to all duties applicable to drivers of motor vehicles).

[15] *Wyatt, supra* note 13.

Instead, presumably because it is incredibly difficult to stop a moving train, there is no duty on the part of an engineer who is operating a train to yield the right of way until the situation is such as to indicate to a reasonably prudent person that to proceed would probably result in a collision.[16] The rules impose such a heightened duty on a traveler crossing an intersection that we have held that "even if the train fails to give warning signals of its approach to the crossing, [a traveler] can not recover if he recklessly fails and neglects to" look and listen "at the proper time [so that] he could have seen the approaching train in time to stop before reaching the crossing."[17] In a similar vein, although in a case involving the issue of comparative negligence under the prior "more than slight" standard, we have held:

> [W]here it is undisputed that a traveler on a highway failed to exercise reasonable precautions by looking and listening at a reasonable point where he could have seen an approaching train in time to stop before reaching the tracks, his negligence, as a matter of law, will defeat a recovery for damages resulting from a collision with a train at a crossing, even though no signal by the locomotive bell or whistle was given as required by law.
>
> Failure of [a] locomotive['s] engineer to ring the bell or blow the whistle as the train approached the crossing, even though it may have been negligent, would not make the railroad company liable for damages . . . in a collision at the crossing, if the driver of the motor vehicle recklessly failed and neglected to have his motor vehicle under control and by looking and listening at the proper time and place could have seen the approaching train in time to stop before reaching the track, but

---

[16] *Dresser, supra* note 12; *Wyatt, supra* note 13.

[17] *Wyatt, supra* note 13, 209 Neb. at 216, 306 N.W.2d at 905.

recklessly failed and neglected to do so, whereby there was a collision.[18]

Here, it is undisputed that Efrain maneuvered his bicycle under the crossing gate as it was either closed or closing. Had Efrain obeyed this traffic signal, which he had every reasonable opportunity to do, he easily would have stopped in a place of safety and avoided the oncoming train. Once he chose to maneuver around the crossing gate, it is also undisputed that the oncoming train was clearly visible to him for at least 3 seconds; yet, he chose to proceed onto the tracks. In my opinion, no reasonable fact finder could conclude that Efrain's negligence in disregarding the closed crossing gate and entering into the path of an oncoming train was not greater than or equal to Union Pacific's failure to blow the horn in the proper sequence and for the 3 seconds prior to the collision.

Gonzalez' brief and the majority opinion generally seek to minimize the degree of Efrain's negligence for two reasons. First, that his ability to see the oncoming train was partially obstructed by the passing train. And second, that he was only 13 years old.

The record does show that Efrain's view of the oncoming train was partially obstructed by the passing train. But, as noted, this visual obstruction cannot be imputed to Union Pacific as negligence. At most, then, it can be considered as a "reasonable excuse" for Efrain's failure to comply with his duty to look for oncoming trains.[19] But even this is unclear. In several cases, we have held that when an obstruction prevents a traveler from seeing an approaching train or a distraction averts a traveler's attention, a railroad is not entitled to rely upon the traveler's duty to stop (presumably because the traveler has a reasonable excuse for not complying with this duty),

---

[18] *Milk House Cheese Corp. v. Chicago, B. & Q. R. R. Co.*, 161 Neb. 451, 465, 73 N.W.2d 679, 687 (1955).

[19] See *Dresser, supra* note 12, 282 Neb. at 542, 809 N.W.2d at 718.

and that the question of whether the traveler's conduct in traversing was reasonable is a matter of fact for the jury.[20]

But none of our prior cases invoking this rule involved a "reasonable excuse" that was not negligently created by the railroad. In *Anderson v. Union Pacific RR. Co.*,[21] a railroad created a visual obstruction by parking 17 empty railcars just east of the crossing on one of three sets of tracks. In *Crewdson v. Burlington Northern RR. Co.*,[22] a railroad created a visual obstruction by parking a coal train west of the crossing on the second of four sets of parallel tracks. And in *Kulhanek v. Union Pacific RR.*,[23] a railroad created a visual obstruction by parking a bus adjacent to the tracks. In each of those cases, we considered the traveler's reduced visibility in analyzing the extent to which he or she breached the duty to look for oncoming trains.

But here, as noted, Union Pacific did not negligently create the visual obstruction, because it had no duty to prevent trains traveling on parallel tracks from simply crossing at an intersection. It thus appears to me that these cases are inapplicable to the instant case. But even assuming the visual obstruction created by the passing trains can be considered in weighing the degree of Efrain's negligent conduct, I would still hold that his negligence was greater than or equal to that of Union Pacific's as a matter of law. It is undisputed that Efrain willfully passed under the crossing gate and was able to see the oncoming train for at least 3 seconds, and yet still chose to enter its path. His complete disregard for the crossing gate safety feature imposed by the railroad at the crossing

---

[20] *Crewdson v. Burlington Northern RR. Co., supra* note 13 (per curiam of three judges, with two judges concurring); *Anderson, supra* note 13. See, also, *Kulhanek v. Union Pacific RR.*, 8 Neb. App. 564, 598 N.W.2d 67 (1999).

[21] *Anderson, supra* note 13.

[22] *Crewdson, supra* note 13.

[23] *Kulhanek, supra* note 20.

is significant negligence, and I do not see how any visual obstruction created by the passing train could constitute a reasonable excuse for ignoring this safety feature. Moreover, it is undisputed that there was no visual obstruction for at least 3 seconds, and there is nothing in the record to suggest that had he looked during those 3 seconds, he would not or could not have seen the approaching train. To the contrary, the only evidence is that he actually did look and did make eye contact with the conductor, and nevertheless chose to attempt to cross the tracks. In these circumstances, any negligence on Union Pacific's part in failing to blow the horn to alert Efrain of the oncoming train is minimal; for had Efrain looked, he would have seen the train in time to return to a place of safety. And had he not disregarded the closed crossing gate, he never would have been in a place of danger at all.

I also do not find it significant that Efrain was only 13 years old. A minor child is required to exercise that degree of care which a person of that age would naturally and ordinarily use in the same situation and under the same circumstances.[24] In *Humphrey v. Burlington Northern RR. Co.*,[25] we held that although it is difficult to find a child contributorily negligent as a matter of law, the contributory negligence of a child is not always a question of fact resting within the purview of a jury. Instead, the issue is whether the child had sufficient knowledge, discretion, and appreciation of the danger that it can be said as a matter of law that the child was contributorily negligent and, if so, whether that contributory negligence is sufficient to bar recovery as a matter of law.[26]

And we have so found in other cases involving children similar in age to Efrain and with similar open and obvious

---

[24] *Humphrey v. Burlington Northern RR. Co.*, 251 Neb. 736, 559 N.W.2d 749 (1997).

[25] *Id.*

[26] *Id.*

dangers. In *Suarez v. Omaha P.P. Dist.*,[27] a 12-year-old boy was shocked and burned when he climbed a 27-foot tree and touched a high-voltage wire. The boy possessed average intelligence and testified that he knew he could be shocked if he touched the wire. We concluded that a 12-year-old should possess sufficient knowledge that a wire carrying electric current is capable of causing shock or injury to one contacting it, and ruled the boy was guilty of contributory negligence to a degree sufficient to bar him from recovery.

In *Garreans v. City of Omaha*,[28] two 12-year-old boys were injured when they dropped a lighted firecracker into a 55-gallon drum labeled "flammable." We held the trial court was clearly wrong when it failed to find them contributorily negligent as a matter of law, reasoning the boys knew what the word "flammable" meant and knew fireworks were dangerous.

I would reach a similar conclusion in this case. A reasonable 13-year-old knows train crossings are dangerous and knows he or she has a duty to stop, look, and listen for oncoming trains. He or she also knows that he or she has a duty not to go under a closed gate at a railroad crossing and enter the path of a train that is approaching him or her. Under the facts of this case, considering the obvious and inherent dangers present at a railroad crossing, there is no reasonable argument that Efrain's age makes any difference in the contributory negligence analysis.[29]

---

[27] *Suarez v. Omaha P.P. Dist.*, 218 Neb. 4, 352 N.W.2d 157 (1984).

[28] *Garreans v. City of Omaha*, 216 Neb. 487, 345 N.W.2d 309 (1984), *overruled on other grounds, Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006).

[29] See, generally, *Egan v. Erie R. Co*., 29 N.J. 243, 148 A.2d 830 (1959) (7-year-old negligent in attempting to board moving freight train); *Olson v. Payne*, 116 Wash. 381, 199 P. 757 (1924) (12-year-old walking beside railroad track negligent); *Kyle v. Boston Elevated Railway*, 215 Mass. 260, 102 N.E. 310 (1913) (6-year-old who ran into street into path of approaching car negligent); *Studer v. Southern Pacific Co*., 121 Cal. 400, 53 P. 942 (1898) (12-year-old who attempted to cross between railcars of nonmoving train negligent).

Union Pacific was entitled to summary judgment if the evidence and the reasonable inferences therefrom were such that a reasonable person could reach only one conclusion— that Efrain's negligence equaled or exceeded Union Pacific's. Union Pacific was negligent, at most, by not sounding the horn in the proper sequence and for failing to sound it during the 3 seconds immediately preceding the accident. Efrain, in contrast, was negligent in failing to look for an approaching train and in maneuvering under the closed crossing gate. Although his visibility was somewhat impaired by the crossing trains, the record shows that Efrain had approximately 3 seconds in which to view the oncoming westbound train. In addition, Efrain had at least 12 seconds of audible warning of the approaching train. Further, nothing in this record contradicts the conductor's testimony that Efrain made eye contact with him, saw the approaching train, and nevertheless decided to attempt to cross. On the record before us, no reasonable fact finder could find that Efrain's negligence was not equal to or greater than Union Pacific's negligence. Although this accident was tragic, subjecting Union Pacific to liability under these circumstances is legally inappropriate, and I therefore dissent.

CASSEL, J., joins in this dissent.